WILSON SONSINI GOODRICH & ROSATI, P.C.
Michael Sommer (*pro hac vice to be submitted*)
msommer@wsgr.com
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: 212-999-5800

Tung-On Kong (SBN 205871) tkong@wsgr.com
Wendy L. Devine (SBN 246337) wdevine@wsgr.com
Kristina Hanson (SBN 315984) thanson@wsgr.com
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105-1126
Telephone: 415-947-2000
Fax: 415-947-2099

Natalie J. Morgan (SBN 211143) nmorgan@wsgr.com
Sarah Siedlak (SBN 317641) ssiedlak@wsgr.com
12235 El Camino Real
San Diego, CA 92130
Telephone: 858-350-2300
Fax: 858-350-2399

*Attorneys for Plaintiff Progenity, Inc.*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION**

| | |
|---|---|
| PROGENITY, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>NATERA, INC., a Delaware corporation,<br><br>    Defendant. | CASE NO. '20 CV 1252 BAS JLB<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMANDED** |

DECLARATORY JUDGMENT COMPLAINT

Plaintiff Progenity, Inc. ("Progenity"), by and through the undersigned counsel, files this Complaint against Defendant Natera, Inc. ("Natera"). Progenity alleges as follows:

## NATURE OF THE ACTION

1. This is a declaratory judgment action seeking a determination that Progenity's in-house use of Innatal® Prenatal Screen ("Innatal") and activities related thereto does not infringe, literally or under the doctrine of equivalents, or contribute to or induce the infringement of any claim of U.S. Patent No. 9,228,234 (attached hereto as Exhibit 1); U.S. Patent No. 9,424,392 (attached hereto as Exhibit 2); U.S. Patent No. 10,227,652 (attached hereto as Exhibit 3); U.S. Patent No. 10,240,202 (attached hereto as Exhibit 4); U.S. Patent No. 10,266,893 (attached hereto as Exhibit 5); and U.S. Patent No. 10,522,242 (attached hereto as Exhibit 6) (collectively, "the Natera Patents"), under 35 U.S.C. § 271 *et seq.*

2. On June 17, 2020, Natera filed a "Complaint for Patent Infringement" against Progenity in the United States District Court for the Western District of Texas, Waco Division ("W.D. Tex. Complaint").

3. On June 19, 2020, Natera filed a "Complaint for Patent Infringement" against Progenity in the United States District Court for the Northern District of Texas, Dallas Division ("N.D. Tex. Complaint").

4. Venue is not proper with respect to Progenity in either the Western District of Texas or the Northern District of Texas.

5. In both the W.D. Tex. Complaint and the N.D. Tex. Complaint, Natera accuses Innatal of infringing the Natera Patents. The W.D. Tex. Complaint and the N.D. Tex. Complaint contain mirror-image allegations regarding alleged infringement of the Natera patents.

6. The allegations made by Natera in the W.D. Tex. Complaint and the N.D. Tex. Complaint give rise to an actual and justiciable controversy between Natera and Progenity as to the non-infringement of the Natera Patents.

## THE PARTIES

7. Progenity is a Delaware corporation with its principal place of business in this District, located at 4330 La Jolla Village Drive, Suite 200, San Diego, CA 92122.

8. Progenity is a biotechnology company with an established track record of success in developing and commercializing molecular testing products, as well as innovating in the field of precision medicine. Progenity provides *in vitro* molecular tests designed to improve lives by providing actionable information that helps guide patients and physicians in making medical decisions during key life stages.

9. Progenity is licensed pursuant to the Clinical Laboratory Improvements Amendments, 42 U.S.C. § 263a ("CLIA"), and accredited by the College of American Pathologists ("CAP").

10. On information and belief, Natera is a Delaware corporation with its principal place of business at 201 Industrial Rd., San Carlos, CA 94070.

## BACKGROUND

11. On information and belief, Natera's baseless allegations of infringement—brought in Texas against San Diego-based Progenity—are a continuation of Natera's campaign to seek retribution against Progenity for rejecting Natera's technology six years ago and developing its own superior technology that competes with Natera.

*2013-2014: Natera's Failed Relationship With Progenity*

12. On or about May 1, 2013, Natera and Progenity entered into a Test Services Agreement ("Natera/Progenity Agreement") under which Natera would provide Progenity with Natera tests, including a non-invasive prenatal test ("NIPT") known as Panorama™ for Progenity to market and sell to Progenity's customers.

DECLARATORY JUDGMENT COMPLAINT   - 2 -

13. With respect to Panorama, Natera publicly represented that it could provide results in a timely manner and that it had a 5-6% "redraw rate"—meaning, failure rate of the test.

14. Incidents of redraw were of particular concern to Progenity because they can result in the patient being unable to receive a test result in a timely manner, thereby affecting prenatal options available to that patient. Redraw can also lead to increased patient anxiety and disruption of the proper care and management of a pregnancy.

15. Under the Natera/Progenity Agreement, Progenity would refer samples from Progenity's customers to Natera for the single function of performing Natera's tests that were within the scope of the Natera/Progenity Agreement. Progenity was solely, and exclusively, responsible and had ownership of the client (*i.e.*, physician/patient) relationship—from both a clinical and customer service perspective, and billing.

16. Unfortunately, Progenity's most basic expectations regarding the quality of Natera's tests were not met. For example, in Progenity's experience, Natera's tests had an unacceptably high redraw rate (approximately 10%) leading to a cascade of problems, including lengthy waits for physicians and patients to receive results. Several of Progenity's physician clients experienced a redraw rate of **50%**.

17. On information and belief, these issues adversely affected physicians and patients and caused Progenity to lose several customers.

18. With respect to NIPT testing, Progenity saw significant room for improvement of customer service via improvement of NIPT test accuracy and quality.

***Cell-Free DNA Testing***

19. The Natera's Panorama test utilizes cell-free DNA ("cfDNA") technology. Cell-free DNA (cfDNA) testing was commercially introduced in late 2011 by non-party Sequenom. Ex. 7.

20. Analysis of cfDNA allows access to the fetal genome during pregnancy through study of a sample of maternal blood. Ex. 8.

21. Commercial cfDNA tests are not diagnostic, however they are able to provide predictive information regarding diagnosis. Ex. 7.

22. Progenity developed its own unique and innovative cfDNA technology, marketed as Innatal. The innovative and proprietary advances that power Innatal facilitate significantly enhanced precision thereby providing a superior alternative to products such as Natera's.

***Progenity's Innatal Prescreen Test***

23. In 2015, Progenity launched Innatal, a noninvasive, prenatal, cfDNA test offered to women in early in pregnancy to screen for risk of fetal chromosomal conditions, such as Down syndrome, trisomy 13, trisomy 18, and sex chromosome disorders. With Innatal, Progenity supports patients and physicians during patients' critical life decisions.

24. Progenity has invested significant resources and years of research to develop the current Innatal test, which represents innovation and advancement in prenatal medical care.

25. The current Innatal test employs a unique Molecular Inversion Probe methodology to estimate the ploidy of chromosomes 13, 18, 21, X, and Y.

26. The latest discoveries underlying Innatal were published in August 2019 in the Journal of Medical Screening, which is a respected, peer-reviewed journal. Ex. 7.

27. That paper shared sensitivity results of greater than 99% for the common trisomies and sex chromosome aneuplodies. Ex. 7. The authors concluded:

> Translating this testing in medical practice will add yet another reason, besides the overall performance, to embrace cfDNA testing as the primary screening for fetal Down syndrome in pregnancy. The impact of cfDNA prenatal screening for chromosomal aneuploidy continues to evolve, and **the introduction of additional innovative sequence targeting techniques as demonstrated in this study will eventually allow test performance to excel**, to reach a standard enabling pregnant women at all levels of risk to expect highly predictive screening options.

Ex. 7 at 8.

28. Progenity's innovative technology is covered by Progenity's own intellectual property, including U.S. Patent No. 10,464,245.

29. In 2014, prior to Progenity's launch of Innatal, Progenity terminated the relationship with Natera. Progenity formally informed Natera of that termination in a letter dated June 9, 2014. In that letter, Progenity noted that the Natera tests did not meet industry standards or Natera's own representations:

> As has been discussed with your management team on numerous occasions during the term of the [Natera/Progenity] Agreement, **the high redraw rate and turnaround time on the performance of your Panorama tests under the Agreement is not consistent with industry standards or your own public representations** and is significantly and negatively impacting our ability to promote and resell these tests.

Progenity's June 2014 letter also noted that Natera could not commit to remedying the defects in its products within a reasonable timeframe:

> Furthermore, based on past performance and communication we understand that Natera does not expect to be in a position to correct these issues for almost one year.

30. On information and belief, following receipt of Progenity's June 9, 2014 letter, Natera has been engaged in a retaliation campaign against Progenity.

DECLARATORY JUDGMENT COMPLAINT   - 5 -

31. On information and belief, Natera's retaliation campaign included directly contacting Progenity's clients with false information, including false statements that Progenity is going out of business and use of Progenity's testing services is illegal.  Ex. 9, ¶¶ 31-36.

32. On information and belief, Natera's false statements were motivated by, among other things, a desire to punish Progenity for pursuing better quality technologies in NIPT market.

33. On information and belief, in an effort to disparage Progenity in the market, Natera's salesforce has made false claims to customers and potential customers of Progenity.  For example, Natera falsely claimed that Innatal is not the subject of any peer-reviewed literature.  Natera disseminated that false claim *after* the the peer-reviewed journal article discussed above was publicly available.  Ex. 10.

34. On information and belief, Natera recognizes that Progenity's Innatal technology is a unique advancement.  On information and belief, Natera brought its  improper suits against Progenity in Texas in order to avoid fairly and openly competing with the superior Innatal product and motivated by the grudge that Natera harbors following the dissolution of the Natera/Progenity relationship resulting from the failings in Natera's own cfDNA testing.

35. Innatal does not infringe any of the six Natera Patents.

36. For example, the claims of the '202 patent require the step of "determining, on a computer, the probability of aneuploidy in the fetus by comparing the measured amounts of genetic material to an expected amount for a particular copy number" or "determining, on a computer, the probability of aneuploidy in the fetus by comparing the measured amounts of genetic material to an expected amount for a particular copy number hypothesis, wherein the expected amount is determined using a mean value of genetic material at multiple loci for a

reference chromosome or chromosome segment that is present in two copies." Ex. 4. Innatal does not include any such step.

37. As another example, the claims of the '652 patent require "determining, on a computer, a probability of the presence and a probability of the absence of a chromosomal abnormality in the fetus by comparing the amounts from step (a) to either (i) a threshold value or (ii) an expected amount for a particular copy number hypothesis" or "computing, for a particular copy number hypothesis, a difference between a mean of the measured amount of genetic material at the multiple loci and an expected amount, wherein the expected amount is a mean value of genetic material at multiple loci for a reference chromosome or chromosome segment that is present in two copies." Ex. 3. Innatal does not include any such step.

38. As another example, the claims of the '392 patent require "determining, on a computer, the probability of the presence and the probability of the absence of a chromosomal abnormality in the fetus by comparing the amount from step (a) to either (i) a threshold value or (ii) an expected amount for a particular copy number hypothesis." Ex. 2. Innatal does not include any such step.

39. As another example, the claims of the '893 patent require "performing universal amplification on the chromosome segments to generate amplified chromosome segments." Ex. 5. Innatal does not include any such step.

40. As another example, the claims of the '234 patent require "determining, on a computer, the probability of each of the hypotheses using the measured genetic data for the chromosome or chromosome segment of interest and the ratio of fetal to maternal DNA." Ex. 1. Innatal does not include any such step.

41. As another example, the claims of the '242 patent require "determining, on a computer, the probability of each of the hypotheses using the measured genetic data for the chromosome or chromosome segment of interest and

the ratio of DNA derived from the fetus to DNA derived from the mother." Ex. 6. Innatal does not include any such step.

42. These differences between Progenity's Innatal and the Natera Patents reflect Progenity's inventive, innovative efforts to increase the precision on cfDNA prenatal testing.

## JURISDICTION AND VENUE

43. This action arises under the patent laws of the United States, 35 U.S.C. §§ 100 et seq., 15 U.S.C. § 1125(a), and 35 U.S.C. § 292

44. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

45. As detailed herein, Natera is subject to personal jurisdiction in this District.

46. Venue is proper in this District under 28 U.S.C. § 1391. As described herein, Natera is subject to personal jurisdiction in this District, and therefore venue is proper. Also, as detailed herein, a substantial part of the events giving rise to this Complaint occurred in this District.

47. On June 17, 2020, Natera filed a "Complaint for Patent Infringement" against Progenity in the United States District Court for the Western District of Texas, Waco Division ("W.D. Tex. Complaint").

48. On June 19, 2020, Natera filed a "Complaint for Patent Infringement" against Progenity in the United States District Court for the Northern District of Texas, Dallas Division ("N.D. Tex. Complaint").

49. Venue is not proper with respect to Progenity in either the Western District of Texas or the Northern District of Texas.

50. In both the W.D. Tex. Complaint and the N.D. Tex. Complaint, Natera accuses Innatal of infringing the Natera Patents.

DECLARATORY JUDGMENT COMPLAINT   - 8 -

51. The allegations made by Natera in the W.D. Tex. Complaint and the N.D. Tex. Complaint give rise to an actual and justiciable controversy between Natera and Progenity as to the non-infringement of the Natera Patents.

52. Natera's infringement allegations threaten actual and imminent injury to Progenity that can be redressed by judicial relief and that injury is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

53. Absent a declaration of non-infringement, Natera's continued wrongful assertions of infringement related to Progenity and Innatal will continue to cause harm to Progenity.

54. This Court has personal jurisdiction over Natera because Natera has accused Progenity, which has a principal place of business in San Diego, of patent infringement thereby causing Progenity significant, ongoing harm.

55. This Court has personal jurisdiction over Natera because, on information and belief, Natera has a continuous, systematic and substantial presence in this District, because it regularly conducts business and/or solicits business within this District.

56. On information and belief, Natera sells its products and services throughout the United States, including in this District.

57. On information and belief, Natera actively markets its products and services throughout the United States, including in this District.

58. On information and belief, Natera employs persons residing in this District.

59. On information and belief, Natera has purposefully availed itself of the privileges and protections of doing business in California, and specifically in this judicial District.

60. On information and belief, Natera is registered to do business in the state of California. Ex. 11. Natera has appointed National Registered Agents, Inc.

DECLARATORY JUDGMENT COMPLAINT   - 9 -

at 818 West Seventh Street, Suite 930, Los Angeles, CA 90017, as its agent for service of process in California.

61. On information and belief, Natera has a business relationship with at least the following "Natera Approved Labs" in San Diego and surrounding areas (Ex. 12):

- WestPac Labs- San Diego - Balboa Park; 2970 5th Ave., San Diego, CA 92103;
- Wellnessmart – National City; 1727 Sweetwater Road #111, National City, Ca 91950;
- Precision Phlebotomy Solutions; 3569 Ruffin Road, San Diego, CA 92123;
- Open Medicine Institute – San Diego; 3706 Ruffin Road, San Diego, California 92123;
- WestPac Labs – San Diego – Alvarado; 6719 Alvarado Road, San Diego, CA 92120;
- WestPac Labs – Chula Vista; 629 Third Ave., Chula Vista, CA 91910;
- Wellnessmart – Kearny Mesa; 7827 Convoy Court, Kearny Mesa, CA 92111;
- WestPac Labs – Poway; 15721 Pomerado Road, Poway, CA 92064;
- WestPac Labs – Encinitas; 317 N. El Camino Real, Encinitas, CA 92024; and
- WestPac Labs – Oceanside; 3923 Waring Road, Oceanside, CA 92056.

62. On information and belief, Natera has a mutually beneficial relationship with San Diego-based Illumina, Inc. and San Diego-based Sequenom, Inc., including license and supply agreements. Ex. 13; Ex. 14.

63. For example, Natera stated in a May 8, 2020 filing with the Security and Exchange Commission:

DECLARATORY JUDGMENT COMPLAINT   - 10 -

> Natera and Illumina have entered into a sixth amendment ("Amendment") to that certain Supply Agreement dated August 16, 2013 (the "Agreement"). The Amendment extends the term of the Agreement to May 8, 2030 and grants Natera certain rights to Illumina's intellectual property for use in non-invasive prenatal testing ("NIPT") using the Illumina sequencing platform, including all patents in a patent pooling agreement between Illumina and Sequenom, Inc. pursuant to which Illumina and Sequenom, Inc. have pooled their intellectual property directed to NIPT. The fees payable by Natera to Illumina for each clinical NIPT test that Natera performs using Illumina reagents will be reduced, beginning in October 2020, with further reductions with increases in volume. Natera is not bound to exclusively use Illumina's sequencing instruments and reagents for conducting its sequencing, but the availability of discounts from Illumina may be affected by reduced volumes on the Illumina sequencing platform. The Amendment also provides that Illumina will offer Natera credits for the purchase of Illumina instruments for use in oncology and organ transplant monitoring product development, and will contribute Illumina products to offset a portion of Natera's new oncology product development. The Amendment extends to May 8, 2026 the date by which Natera must obtain a premarket approval for at least one in-vitro diagnostic ("IVD") from the United States Food and Drug Administration, failing which Illumina may terminate Natera's rights with respect to IVDs. The Amendment also eliminates Illumina's right to terminate certain rights under the Agreement upon two years' prior notice.

Ex. 15.

64. In that same Security and Exchange Commission filing, Natera further stated:

> Natera and Illumina also entered into a License Agreement dated May 8, 2020 pursuant to which, among others, Natera has granted Illumina a non-exclusive, perpetual worldwide license to certain of Natera's intellectual property in the [U.S. Patent No. 8,682,592] Patent family ("Natera Licensed IP"). The foregoing license is limited to certain uses of massively parallel sequencing in the fields of NIPT and PGS/PGD, and excludes certain approaches (including those used in Natera's Panorama test). In order to maintain their respective licenses, each party has agreed not to challenge the validity or enforceability of the intellectual property licensed to it, subject in each case to certain customary exceptions.

DECLARATORY JUDGMENT COMPLAINT  - 11 -

Ex. 15.

65. On information and belief, Natera sells its products and services through physicians and midwives in San Diego. Ex. 16. (San Diego midwives offering Natera products and services); Ex. 17 (San Diego patient receiving Natera products and services).

## FIRST CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 9,228,234 ("the '234 patent")

66. Progenity realleges and incorporates herein by reference the allegations of each of the preceding paragraphs as if fully set forth herein.

67. On information and belief, the '234 patent is assigned to Natera.

68. Natera has claimed that Innatal infringes the claims of the '234 patent.

69. Innatal has not, and does not, infringe, either directly or indirectly, any valid claim of the '234 patent.

70. There is a definite and concrete, real and substantial, justiciable, and continuing case or controversy existing between the parties regarding whether Innatal infringes any valid claim of the '234 patent that is of sufficient immediacy and reality to warrant the issuance of a Declaratory Judgment.

71. Progenity is entitled to a declaratory judgment that Innatal does not infringe any claim of the '234 patent.

## SECOND CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 9,424,392 ("the '392 patent))

72. Progenity realleges and incorporates herein by reference the allegations of each of the preceding paragraphs as if fully set forth herein.

73. On information and belief, the '392 patent is assigned to Natera.

74. Natera has claimed that Innatal infringes the claims of the '392 patent.

75. Innatal has not, and does not, infringe, either directly or indirectly, any valid claim of the '392 patent.

76. There is a definite and concrete, real and substantial, justiciable, and continuing case or controversy existing between the parties regarding whether Innatal infringes any valid claim of the '392 patent that is of sufficient immediacy and reality to warrant the issuance of a Declaratory Judgment.

77. Progenity is entitled to a declaratory judgment that Innatal does not infringe any claim of the '392 patent.

## THIRD CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 10,227,652 ("the '652 patent))

78. Progenity realleges and incorporates herein by reference the allegations of each of the preceding paragraphs as if fully set forth herein.

79. On information and belief, the '652 patent is assigned to Natera.

80. Natera has claimed that Innatal infringes the claims of the '652 patent.

81. Innatal has not, and does not, infringe, either directly or indirectly, any valid claim of the '652 patent.

82. There is a definite and concrete, real and substantial, justiciable, and continuing case or controversy existing between the parties regarding whether Innatal infringes any valid claim of the '652 patent that is of sufficient immediacy and reality to warrant the issuance of a Declaratory Judgment.

83. Progenity is entitled to a declaratory judgment that Innatal does not infringe any claim of the '652 patent.

## FOURTH CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 10,240,202 ("the '202 patent))

84. Progenity realleges and incorporates herein by reference the allegations of each of the preceding paragraphs as if fully set forth herein.

DECLARATORY JUDGMENT COMPLAINT   - 13 -

85. On information and belief, the '202 patent is assigned to Natera.

86. Natera has claimed that Innatal infringes the claims of the '202 patent.

87. Innatal has not, and does not, infringe, either directly or indirectly, any valid claim of the '202 patent.

88. There is a definite and concrete, real and substantial, justiciable, and continuing case or controversy existing between the parties regarding whether Innatal infringes any valid claim of the '202 patent that is of sufficient immediacy and reality to warrant the issuance of a Declaratory Judgment.

89. Progenity is entitled to a declaratory judgment that Innatal does not infringe any claim of the '202 patent.

## FIFTH CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of
### U.S. Patent No. 10,266,893 ("the '893 patent))

90. Progenity realleges and incorporates herein by reference the allegations of each of the preceding paragraphs as if fully set forth herein.

91. On information and belief, the '893 patent is assigned to Natera.

92. Natera has claimed that Innatal infringes the claims of the '893 patent.

93. Innatal has not, and does not, infringe, either directly or indirectly, any valid claim of the '893 patent.

94. There is a definite and concrete, real and substantial, justiciable, and continuing case or controversy existing between the parties regarding whether Innatal infringes any valid claim of the '893 patent that is of sufficient immediacy and reality to warrant the issuance of a Declaratory Judgment.

95. Progenity is entitled to a declaratory judgment that Innatal does not infringe any claim of the '893 patent.

## SIXTH CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 10,522,242 ("the '242 patent))

96. Progenity realleges and incorporates herein by reference the allegations of each of the preceding paragraphs as if fully set forth herein.

97. On information and belief, the '242 patent is assigned to Natera.

98. Natera has claimed that Innatal infringes the claims of the '242 patent.

99. Innatal has not, and does not, infringe, either directly or indirectly, any valid claim of the '242 patent.

100. There is a definite and concrete, real and substantial, justiciable, and continuing case or controversy existing between the parties regarding whether Innatal infringes any valid claim of the '242 patent that is of sufficient immediacy and reality to warrant the issuance of a Declaratory Judgment.

101. Progenity is entitled to a declaratory judgment that Innatal does not infringe any claim of the '242 patent.

## PRAYER FOR RELIEF

WHEREFORE, Progenity respectfully requests that he Court

a. Enter judgment according to the declaratory relief sought;

b. Award Progenity its costs in this action; and

c. Enter such other further relief as this Court may deem just and appropriate.

DECLARATORY JUDGMENT COMPLAINT   - 15 -

| | | |
|---|---|---|
| 1 | Dated: July 2, 2020 | **WILSON SONSINI GOODRICH & ROSATI, P.C.** |
| 2 | | By: */s/ Natalie J. Morgan* |
| 3 | | Michael Sommer (*pro hac vice to be submitted*) |
| | | msommer@wsgr.com |
| 4 | | 1301 Avenue of the Americas, 40th Floor |
| 5 | | New York, NY  10019-6022 |
| | | Telephone: 212-999-5800 |
| 6 | | |
| 7 | | Tung-On Kong (SBN 205871) |
| | | tkong@wsgr.com |
| 8 | | Wendy L. Devine (SBN 246337) |
| 9 | | wdevine@wsgr.com |
| | | Kristina Hanson (SBN 315984) |
| 10 | | thanson@wsgr.com |
| 11 | | One Market Plaza |
| | | Spear Tower, Suite 3300 |
| 12 | | San Francisco, California 94105-1126 |
| 13 | | Telephone: 415-947-2000 |
| | | Fax: 415-947-2099 |
| 14 | | |
| 15 | | Natalie J. Morgan (SBN 211143) |
| | | nmorgan@wsgr.com |
| 16 | | Sarah Siedlak (SBN 317641) |
| 17 | | ssiedlak@wsgr.com |
| | | 12235 El Camino Real |
| 18 | | San Diego, CA 92130 |
| 19 | | Telephone: 858-350-2300 |
| | | Fax: 858-350-2399 |
| 20 | | |
| 21 | | *Attorneys for Plaintiff Progenity, Inc.* |

DECLARATORY JUDGMENT COMPLAINT   - 16 -

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff Progenity, Inc. demands a trial by jury of this action.

Dated: July 2, 2020     **WILSON SONSINI GOODRICH & ROSATI, P.C.**

By:  /s/ *Natalie J. Morgan*
Michael Sommer (*pro hac vice to be submitted*)
msommer@wsgr.com
1301 Avenue of the Americas, 40th Floor
New York, NY  10019-6022
Telephone: 212-999-5800

Tung-On Kong (SBN 205871)
tkong@wsgr.com
Wendy L. Devine (SBN 246337)
wdevine@wsgr.com
Kristina Hanson (SBN 315984)
thanson@wsgr.com
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105-1126
Telephone: 415-947-2000

Natalie J. Morgan (SBN 211143)
nmorgan@wsgr.com
Sarah Siedlak (SBN 317641)
ssiedlak@wsgr.com
12235 El Camino Real
San Diego, CA 92130
Telephone: 858-350-2300

*Attorneys for Plaintiff Progenity, Inc.*

DEMAND FOR JURY TRIAL     - 17 -

# INDEX OF EXHIBITS

| Exhibit No. | Page Range |
|---|---|
| 1 | 19-58 |
| 2 | 59-115 |
| 3 | 116-178 |
| 4 | 179-240 |
| 5 | 241-308 |
| 6 | 309-355 |
| 7 | 356-363 |
| 8 | 364-371 |
| 9 | 372-401 |
| 10 | 402 |
| 11 | 403 |
| 12 | 404-411 |
| 13 | 412-413 |
| 14 | 414-416 |
| 15 | 417 |
| 16 | 418-419 |
| 17 | 420-424 |